No. 23-2200

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

MARK RIDLEY-THOMAS

*Defendant-Appellant.*

_____

On Appeal from the United States District Court for the Central
District of California, The Honorable Dale S. Fischer, Presiding.
CR No. 2:21-cr-00485-DSF

_____

**APPELLANT'S SUPPLEMENTAL BRIEF**

_____

Paul J. Watford
WILSON SONSINI GOODRICH & ROSATI
   *953 East Third Street, Suite 100*
   *Los Angeles, CA 90013*

Erwin Chemerinsky
UNIVERSITY OF CALIFORNIA,
BERKELEY SCHOOL OF LAW
   *Law Building 215*
   *Berkeley, CA 94720*

Alyssa D. Bell
Michael V Schafler
Neil S. Jahss
COHEN WILLIAMS LLP
   *724 South Spring Street, 9th Floor*
   *Los Angeles, CA 90014*
   *(213) 232-5160*
   *abell@cohen-williams.com*

*Attorneys for Mark Ridley-Thomas*

# **TABLE OF CONTENTS**

SUPPLEMENTAL BRIEF ................................................................................1

    A.    *Snyder* clarified that § 666 prohibits only *quid pro quo* corruption. ...............................................................................1

    B.    The district court's denial of Ridley-Thomas's request for an instruction on an essential element of the offense requires reversal of Count 2. .......................................................................3

    C.    The district court's denial of Ridley-Thomas's request for jury instructions that presented his theory of defense requires reversal of Count 2. .......................................................................8

    D.    The government's reliance upon a legally invalid "monetization" theory requires reversal of Count 2. .....................................................9

CONCLUSION ...............................................................................................13

CERTIFICATE OF COMPLIANCE ..............................................................14

i

# **TABLE OF AUTHORITIES**

**Cases**

*Ciminelli v. United States*,
　598 U.S. 306 (2023) ............................................................................................ 9

*Kelly v. United States*,
　590 U.S. 391 (2020) ............................................................................................ 9

*Neder v. United States*,
　527 U.S. 1 (1999) ................................................................................................ 7

*Snyder v. United States*,
　144 S. Ct. 1947 (2024) ............................................................................... *passim*

*United States v. Chen*,
　754 F.2d 817 (9th Cir. 1985) .............................................................................. 8

*United States v. Fernandez*,
　722 F.3d 1 (1st Cir. 2013) ................................................................................... 7

*United States v. Griffin*,
　154 F.3d 762 (8th Cir. 1998) .............................................................................. 2

*United States v. Kleinman*,
　880 F.3d 1020 (9th Cir. 2017) ............................................................................ 3

*United States v. Mariano*,
　983 F.2d 1150 (1st Cir. 1993) ............................................................................ 3

*United States v. Sanchez*,
　659 F.3d 1252 (9th Cir. 2011) .......................................................................... 10

*United States v. Sun-Diamond Growers of Cal.*,
　526 U.S. 398 (1999) ........................................................................................ 2, 3

*United States v. Yates*,
　16 F.4th 256 (9th Cir. 2021) ................................................................. 11, 12, 13

**Statutes**

18 U.S.C. § 666 ....................................................................................... *passim*

# SUPPLEMENTAL BRIEF

As explained in his merits briefs, Appellant Mark Ridley-Thomas is entitled to a judgment of acquittal on Count 2 because the perceived reputational benefit on which that conviction rests is not a "thing of value" under 18 U.S.C. § 666. (AOB-62-64; ARB-39-42.) At a minimum, however, Ridley-Thomas is entitled to a new trial on Count 2 due to the district court's instructional errors, and the Supreme Court's recent decision in *Snyder v. United States*, 144 S. Ct. 1947 (2024), only confirms that conclusion. (AOB-68-72; ARB-43-47.)

In *Snyder*, the Court held that § 666 "is a bribery statute and not a gratuities statute …." *Id.* at 1954. *Snyder* thus establishes that the district court erred in refusing to instruct the jury that § 666 requires a *quid pro quo*, that gratuities cannot be bribes (*i.e.*, that "[a] benefit made to reward a politician for an act he has already taken or has already determined to take is not a bribe," 5-ER-928), and that goodwill gifts are not criminal. It also makes clear that the government's "monetization" theory—which urged Ridley-Thomas's conviction for receiving a reward, absent a *quid pro quo*—was a legally invalid theory of federal-programs bribery.

### A. *Snyder* clarified that § 666 prohibits only *quid pro quo* corruption.

*Snyder* involved the prosecution of a local official who awarded a $1.1 million trucking contract to a company that, the following year, paid the official

1

$13,000. *Id.* at 1954. The government charged him with receipt of an illegal gratuity under § 666. *Id.* The official argued that § 666 does not extend to gratuities, no matter how unsavory, and the Supreme Court granted certiorari to resolve § 666's scope. *Id.*

*Snyder* held that § 666 prohibits only bribery—that is, "payments made or agreed to *before* an official act in order to influence the official with respect to that future official act," *id.* at 1951, and "reward[s] given after the act pursuant to an agreement beforehand," *id.* at 1959. Bribes, *Snyder* thus explained, require a *quid pro quo* agreement to exchange enrichment for official action. *See id.*; *see also id.* at 1962 (Jackson, J., dissenting) ("This Court has also been clear about what a bribe requires: 'a *quid pro quo*.'") (quoting *United States v. Sun-Diamond Growers of Cal.*, 526 U.S. 398, 404 (1999)). Gratuities, by comparison, are "reward[s] given after the act with no agreement beforehand …." *Snyder*, 144 S. Ct. at 1959.

Following *Snyder*, the line dividing bribes and gratuities is clear. A bribe requires a *quid pro quo* agreement, while a gratuity does not. *Id.* at 1959 (explaining that a bribe involves "an agreement beforehand" to trade payment for official action, while a gratuity does not); *accord United States v. Griffin*, 154 F.3d 762, 764 (8th Cir. 1998), *as amended* (Sept. 8, 1998) ("The core difference between a bribe and a gratuity is not the time the illegal payment is made, but the *quid pro quo*, or the agreement to exchange [a thing of value] for official action.");

2

*United States v. Mariano*, 983 F.2d 1150, 1159 (1st Cir. 1993) ("The essential difference between a bribe and an illegal gratuity is the intention of the bribe-giver to effect a *quid pro quo*.").

Because § 666 prohibits only bribery, all manner of gratuities—including rewards "made to an official *after* an official act as a token of appreciation," *Snyder*, 144 S. Ct. at 1951, and rewards made "for some future act that the public official … may already have determined to take," *Sun-Diamond*, 526 U.S. at 405—fall beyond the statute's reach.

### B. The district court's denial of Ridley-Thomas's request for an instruction on an essential element of the offense requires reversal of Count 2.

Because the district court refused—over Ridley-Thomas's objection—to instruct the jury on § 666's *quid pro quo* requirement, the instructions omitted an essential element of the offense. This Court must therefore reverse Ridley-Thomas's conviction on Count 2 unless the government can prove the error "did not contribute to the guilty verdict" and was harmless "beyond a reasonable doubt." *United States v. Kleinman*, 880 F.3d 1020, 1035 (9th Cir. 2017). The government cannot meet that demanding standard—particularly since the *undisputed* evidence was, at worst, more consistent with Ridley-Thomas's receipt of a gratuity than his solicitation of a bribe.

3

Ridley-Thomas's support for the Telehealth program, and the amendment expanding its scope of services, long predated his agreement with then-Dean Marilyn Flynn to move funds from his Ballot Committee to PRPI. The two collaborated at the inception of the Telehealth program four years prior (in 2014), when Ridley-Thomas appointed Flynn to the Blue Ribbon Commission on Child Health and Safety, and devised means to connect at-risk youth with much-needed mental health services. (8-ER-1511; 22-ER-4269, 4273-74.) When the Telehealth Clinic faced insolvency, its then-Executive Director, Marleen Wong, sent Flynn an email on February 23, 2018, discussing a proposal for amending the Telehealth contract to expand its scope of services and increase its billing rate. (7-ER-1192-93.) Wong told Flynn that it would "be helpful if [Ridley-Thomas] knew about" the proposed amendments, which enjoyed the support of the Department of Mental Health's leadership, since Ridley-Thomas had "initiate[d] the Contract a few years ago." (7-ER-1192.) Flynn followed Wong's advice and quickly forwarded her email to Ridley-Thomas, soliciting his support for amendments that reflected USC's "need to expand billable services and to increase the flat rate for services to a level comparable to other county contract agencies." (*Id.*) The same day, Ridley-Thomas unsurprisingly agreed to support USC's proposed amendments to a program he had long supported, telling Flynn, "Your wish is my command." (7-ER-1194.)

4

Ridley-Thomas then took what the government claimed was official action: he forwarded Flynn's email to his deputy, Emily Williams, asking her to "follow up." (7-ER-1196; 23-ER-4449 ("[W]hen the Defendant emailed one of his deputies and essentially instructed them to follow up for Dean Marilyn Flynn on the Telehealth contract amendment, that was an official act.").) Williams, in turn, suggested she connect with Ridley-Thomas's mental health and homelessness deputy, and talk with her counterparts in the other Supervisors' offices. (7-ER-1196; 22-ER-4294-97.) About five weeks after Williams got to work, Flynn told Wong that Ridley-Thomas's support for the Telehealth amendment was locked in. (2-SER-412.)

It was not until late April 2018—two months *after* Ridley-Thomas had expressed his unequivocal support for the Telehealth amendment and taken one of several official actions aimed to secure its passage—that he and Flynn first discussed a role for USC in moving funds from his Ballot Committee to PRPI. (7-ER-1194, 1285; 8-ER-1444; 17-ER-3231.) In other words, the undisputed evidence shows that, by the time Ridley-Thomas received Flynn's assistance (the alleged "thing of value"), he had *already* committed to supporting the Telehealth amendment and taken alleged official action in its favor. There was no this-for-that exchange in February for a reward to be paid in April. Rather, in February,

5

Ridley-Thomas committed to vote in favor of the Telehealth amendment with no strings attached.

Against this backdrop, it is no surprise that the government made the strategic choice to argue in closing that Ridley-Thomas had committed federal-programs bribery by "seek[ing] to be rewarded on matters" within his official purview—including official acts he was already "going to do"—rather than cabining its arguments to a *quid pro quo* theory. (23-ER-4447-48, 4491.) "[W]ith respect to bribery," the government told the jury, "there's actually no *quid pro quo* required. In other words, the crime is committed with the corrupt asking; asking to be rewarded in connection with the public servant doing their job." (23-ER-4446.) The government made numerous such arguments, each seeking Ridley-Thomas's conviction for accepting a reward, absent a *quid pro quo*. (*See, e.g.*, 23-ER-4448 (arguing that Ridley-Thomas was "guilty of bribery" if he "ask[ed] for a reward for something related to his job."); 1-ER-129 (emphasizing Ridley-Thomas's alleged "intent[] to be rewarded").) Per *Synder*, however, even a local official's solicitation of a reward "related to his job" is *not* bribery—only "reward[s] given … pursuant to an agreement beforehand" (*i.e.*, *quid pro quos*) violate § 666. *Snyder*, 144 S. Ct. at 1959.

Ridley-Thomas, for his part, vigorously contested that his support for the Telehealth amendment, and the official acts he took to increase its chances of

6

success, were part of a corrupt exchange. Given that the Telehealth program was essentially his brainchild, and that it provided critical mental health services to his most vulnerable constituents, Ridley-Thomas devoted much of his closing statement to arguing that "[n]obody would think they needed to bribe Mark Ridley-Thomas to support Telehealth …." (23-ER-4387; *see also* 23-ER-4384-89.) Contrary to the government's version of events, Ridley-Thomas explained that he voted in favor of the Telehealth amendment because it "was a great idea," and it "made [Telehealth] available for more people," including homeless veterans and high-risk children less than twelve years old. (7-ER-1158; 23-ER-4388.)

Because Ridley-Thomas "contested the omitted element and raised evidence sufficient to support a contrary finding," the court "should not find the error harmless." *Neder v. United States*, 527 U.S. 1, 19 (1999); *see also United States v. Fernandez*, 722 F.3d 1, 20, 39 (1st Cir. 2013) (reversing public official's § 666 conviction where district court refused to give a *quid pro quo* instruction and the "jury reasonably could have found" the alleged benefit "was a reward for [the defendant's] prior conduct, rather than [a] quid pro quo").

In sum, the jury was not instructed on an essential element of § 666 and the error was not harmless. The Court must therefore reverse and remand for a new trial.

7

### C. The district court's denial of Ridley-Thomas's request for jury instructions that presented his theory of defense requires reversal of Count 2.

*Snyder* compels the conclusion that the district court erred in yet another respect. Ridley-Thomas requested theory-of-defense instructions that differentiated bribes from gratuities and explained that goodwill gifts are not criminal. (5-ER-928.) The district court declined to give both. Following *Snyder*, those errors compel reversal.

Where, as here, an alleged benefit could be interpreted as either a gratuity or a bribe, this Court requires an instruction explaining the difference. *United States v. Chen*, 754 F.2d 817, 825 (9th Cir. 1985) (evidence that benefit was a "tip" "was sufficient to require a jury instruction" differentiating gratuities from bribes). The government claims that *Chen* is not controlling because § 666 covers both bribes and gratuities. (GAB-93-94.) *Snyder* held the opposite, so the government's argument fails.

Likewise, no instruction explained to jurors that Flynn's assistance, like any other benefit bestowed to curry favor, was lawful unless it was part of a corrupt exchange. But this Court held more than a decade ago that, absent a *quid pro quo* instruction, an instruction defining goodwill gifts is necessary to "distinguish between" corruption and, as is the case here, "an elected official responding to legitimate lobbying." *United States v. Kincaid-Chauncey*, 556 F.3d 923, 942-43

8

(9th Cir. 2009) (where district court refuses to give a *quid pro quo* instruction, "there is no discernible way" "to avoid convicting people for having the 'mere intent to curry favor'"). Because the district court refused to instruct the jury on § 666's *quid pro quo* element *and* declined Ridley-Thomas's request for a goodwill gift instruction, there is a grave risk that the jury convicted Ridley-Thomas of bribery although his conduct complied fully with federal law.[1]

Because these instructional errors taint the verdict, Ridley-Thomas's conviction on Count 2 must be reversed.

### D. The government's reliance upon a legally invalid "monetization" theory requires reversal of Count 2.

Finally, *Snyder* also establishes that the government presented the jury with a legally invalid theory of federal-programs bribery. At trial, the government argued that Ridley-Thomas was guilty on all counts if he "monetized" his public service by accepting a reward for official action that he had already committed to take—*i.e.*, a gratuity, not a bribe. (AOB-58-62.) On appeal, the government has defended the validity of its "monetization" theory by arguing that prosecutors'

---

[1] Ridley-Thomas's donation to PRPI through USC also complied fully with California's complex regulatory framework of campaign finance laws and public disclosure requirements (2-ER-303-05, 328-29; 7-ER-1271), and the Supreme Court has cautioned, time and again, against vesting federal prosecutors with discretion "'to enforce ([their] view of) integrity in broad swaths of state and local policymaking.'" *Ciminelli v. United States*, 598 U.S. 306, 312 (2023) (quoting *Kelly v. United States*, 590 U.S. 391, 404 (2020)); *see also Snyder*, 144 S. Ct. at 1958 (collecting cases).

9

"references to a 'reward' in closing argument" were proper, at least as to Count 2, because "no *quid pro quo* is required" for federal-programs bribery. (GAB-80). *Snyder*, once again, makes clear that the government is wrong. Section 666 requires a *quid pro quo*, and the government's overbroad "monetization" theory was a legally invalid basis for conviction.

As set forth in Ridley-Thomas's merits briefs, the record is replete with references to the government's "monetization" theory, which told jurors that receipt of a gratuity was "still bribery." (23-ER-4491; *see* AOB-58-62; ARB-35-37.) For example, in its rebuttal closing argument—when it had the last word, and the prejudice to Ridley-Thomas was greatest, *see United States v. Sanchez*, 659 F.3d 1252, 1261 (9th Cir. 2011) (because rebuttal argument is "the last argument the jury hear[s] before going to the jury room to deliberate," it carries an "increased" risk of "improperly influenc[ing] the jurors")—the government doubled down on its "monetization" theory and argued jurors should convict Ridley-Thomas for "asking to be rewarded in connection with" his "job," including in connection with official acts he already planned to take. (23-ER-4446; *see also* 23-ER-4491 ("[E]ven if he were going to do certain things, if he did those things and he accepted a reward for those things, it's still bribery").)

Following *Snyder*, it is beyond dispute that the government's "monetization" theory was legally invalid. Jurors relying on that theory would have understood

10

they should convict Ridley-Thomas even if he accepted a reward "related to" his official *position*, absent any agreement beforehand.[2] (23-ER-4448.) *Snyder* held such conduct falls outside the scope of § 666.

This Court must reverse where, as here, the government presents a legally invalid theory that is "the focus of the entire prosecution from beginning to end," and the jury instructions "d[o] nothing … to preclude conviction," "despite the defendant[']s] request for an instruction" that correctly states the law. *United States v. Yates*, 16 F.4th 256, 269 (9th Cir. 2021). That is precisely what occurred here, from start to finish.

The indictment charged Ridley-Thomas with accepting things of value from Flynn—including her assistance in "funnel[ing] a $100,000 payment from the Mark Ridley-Thomas Committee for a Better L.A. through the University/Social Work School to [PRPI]," (6-ER-1128)—with the intent "to be influenced *and rewarded* in connection with, … the issuance of, and amendment to, County

---

[2] The government's repetitious claims that Ridley-Thomas "monetized" his public service also connoted corruption that the government never so much as alleged, and certainly never proved. Ridley-Thomas derived no personal enrichment from Flynn's assistance in moving funds from his Ballot Committee to PRPI. (AOB-34-42.) His vote in favor of the Telehealth amendment—which allocated $547,500 to USC, not 8 million, as the government intimated—did not line his pockets either. (18-ER-3412-13; 21-ER-4068; 4-SER-919.)

11

contracts with the University and Social Work School," (6-ER-1136) (emphasis added).

At trial, the government's "monetization" theory "did not make up just a few stray lines on a PowerPoint slide at closing argument." *Yates*, 16 F.4th at 269. Rather, that contrived theory was the focus of both opening and closing arguments, as well as the case agent's pseudo-expert testimony defining the term and presenting the government's theory from the witness stand. (*See, e.g.*, 1-ER-129-31, 133-34, 203; 19-ER-3554-55, 3558; 23-ER-4491, 4551-52.)

The jury instructions "did nothing" to neutralize the error. *Yates*, 16 F.4th at 269. Ridley-Thomas requested a jury instruction stating that § 666 requires proof of a *quid pro quo*, but the district court refused to give it. (5-ER-838.) He also requested an instruction stating that gratuities are not bribes, (5-ER-928 ("A benefit made to reward a politician for an act he has already taken or has already determined to take is not a bribe.")), but the district court refused to give that instruction as well. As a result, *nothing* in the instructions precluded reliance upon the government's invalid "monetization" theory.

Under such circumstances, it is impossible to "declare a belief" that the government's presentation of a legally invalid theory "was harmless beyond a reasonable doubt, in that it did not contribute to the verdict obtained." *Yates*, 16

12

F.4th at 269 (citation omitted). Ridley-Thomas's conviction on Count 2 must therefore be reversed.

## CONCLUSION

For these reasons, and those stated in Ridley-Thomas's merits briefs, the Court must reverse Ridley-Thomas's conviction on Count 2 and, at a minimum, remand for a new trial.

Dated: August 30, 2024         **COHEN WILLIAMS LLP**

By: _____/s/ Alyssa D. Bell_____
Alyssa D. Bell
Michael V Schafler
Neil S. Jahss

Paul J. Watford
**WILSON SONSINI GOODRICH & ROSATI**

Erwin Chemerinsky
**UNIVERSITY OF CALIFORNIA, BERKELEY SCHOOL OF LAW**

*Attorneys for Mark Ridley-Thomas*

13

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32 (a)(7)(C) and Ninth Circuit Rule 32-1, I certify that this reply brief is proportionally spaced, has a typeface of 14 points and contains approximately 2,794 words.

Dated: August 30, 2024　　　　　**COHEN WILLIAMS LLP**


By: _____*/s/ Alyssa D. Bell*_____
　　　Alyssa D. Bell
　　　Attorneys for Mark Ridley-Thomas