No. 23-2200

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*

MARK RIDLEY-THOMAS,
*Defendant-Appellant.*

*APPEAL FROM THE UNITED STATES DISTRICT COURT*
*FOR THE CENTRAL DISTRICT OF CALIFORNIA*
*DISTRICT COURT NO. CR 21-485-DSF-1*

## GOVERNMENT'S SUPPLEMENTAL ANSWERING BRIEF

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

LINDSEY GREER DOTSON
ELANA SHAVIT ARTSON
THOMAS F. RYBARCZYK
MICHAEL J. MORSE
Assistant United States Attorneys

1500 United States Courthouse
312 North Spring Street
Los Angeles, CA 90012
Telephone: (213) 894-4443
Email: lindsey.dotson@usdoj.gov

Attorneys for Plaintiff-Appellee
UNITED STATES OF AMERICA

## TABLE OF CONTENTS

**DESCRIPTION**                                                    **PAGE(S)**

I.      INTRODUCTION ................................................................... 1

II.     ARGUMENT ......................................................................... 2

        A.    The Lack of a *Quid Pro Quo* Instruction for Count 2 Is
              Harmless Because Defendant's Honest Services Fraud
              Convictions Required a *Quid Pro Quo* ................................... 2

              1.    The jury's *quid pro quo* finding for its honest
                    services fraud convictions establishes beyond a
                    reasonable doubt that the jury would have
                    convicted defendant of violating section 666
                    if instructed per *Snyder* .................................... 2

              2.    Defendant's harmlessness analysis misses the
                    mark because it ignores the jury's *quid pro quo*
                    finding .................................................... 4

        B.    The Court Did Not Err in Declining to Give an
              Incorrect Theory-of-Defense Instruction, and
              Regardless, Any Error Is Harmless Because the Jury
              Found a *Quid Pro Quo* ........................................... 11

        C.    *Snyder* Confirms That the Government's References
              to Defendant "Monetizing" His Public Office Described
              Bribery, Not Gratuities ........................................... 14

III.    CONCLUSION ................................................................... 16

# TABLE OF AUTHORITIES

**DESCRIPTION** **PAGE(S)**

## Cases

*City of Columbia v. Omni Outdoor Advert., Inc.,*
 499 U.S. 365 (1991) ................................................................... 15

*Neder v. United States,*
 527 U.S. 1 (1999) ........................................................... 3, 4, 5, 11

*Skilling v. United States,*
 561 U.S. 358 (2010) ..................................................................... 3

*Snyder v. United States,*
 144 S.Ct. 1947 (2024) ........................................................ passim

*United States v. Christensen,*
 828 F.3d 763 (9th Cir. 2015) ....................................................... 3

*United States v. Fernandez,*
 722 F.3d 1 (1st Cir. 2013) ............................................................ 5

*United States v. Garrido,*
 713 F.3d 985 (9th Cir. 2013) ....................................................... 6

*United States v. Jefferson,*
 674 F.3d 332 (4th Cir. 2012) ....................................................... 4

*United States v. Kayser,*
 488 F.3d 1070 (9th Cir. 2007) ................................................... 14

*United States v. Kimbrew,*
 944 F.3d 810 (9th Cir. 2019) ..................................................... 12

*United States v. Shen Zhen New World I, LLC,*
 –F.4th–, 2024 WL 4140629 (9th Cir. Sept. 11, 2024) ............. 12, 13, 14

# TABLE OF AUTHORITIES (continued)

**DESCRIPTION**                                       **PAGE(S)**

*United States v. Siegelman,*
  640 F.3d 1159 (11th Cir. 2011)................................................................4

*United States v. Villalobos,*
  748 F.3d 953 (9th Cir. 2014)..................................................................3

*United States v. Wilkes,*
  662 F.3d 524 (9th Cir. 2011).........................................................3, 4, 11

*United States v. Yates,*
  16 F.4th 256 (9th Cir. 2021) ..................................................................5

**Statutes**

18 U.S.C. § 666................................................................................... passim

No. 23-2200

## IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

*v.*

MARK RIDLEY-THOMAS,
*Defendant-Appellant*.

*APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
DISTRICT COURT NO. CR 21-485-DSF-1*

### GOVERNMENT'S SUPPLEMENTAL ANSWERING BRIEF

## I

## INTRODUCTION

In *Snyder v. United States*, 144 S.Ct. 1947 (2024), the Supreme Court held that 18 U.S.C. § 666 requires *quid pro quo* bribery. Gratuities for past official action—that is, "a reward given after the act with no agreement beforehand"—are not covered. *Id.* at 1959. Here, the instructions on the section 666 charge (Count 2) did not inform the jury of the *quid pro quo* requirement. However, the honest services

fraud instructions did require the jury to find a *quid pro quo*. Thus, with each of its five honest services fraud convictions, the jury necessarily found the requisite this-for-that exchange that *Snyder* extended to federal program bribery. Any error under *Snyder* is therefore harmless. Accordingly, defendant's conviction on Count 2 should be affirmed.

## II

## ARGUMENT

### A. The Lack of a *Quid Pro Quo* Instruction for Count 2 Is Harmless Because Defendant's Honest Services Fraud Convictions Required a *Quid Pro Quo*

#### 1. *The jury's* quid pro quo *finding for its honest services fraud convictions establishes beyond a reasonable doubt that the jury would have convicted defendant of violating section 666 if instructed per* Snyder

The court instructed the jury on federal program bribery using the express language of the statute. (1-ER-66-67.) *See* 18 U.S.C. § 666(a)(1)(B). Although those instructions did not specifically require a *quid pro quo*, any error is harmless. The jury convicted defendant on five counts of honest services fraud for which it had to find a "quid pro quo" consisting of a "bribe in exchange for at least one official act by defendant." (1-ER-68, 70, 74-76.)

Omission or misdescription of an element is harmless where the court can conclude beyond a reasonable doubt that the error did not affect the verdict. *Neder v. United States*, 527 U.S. 1, 15-16 (1999). This Court has repeatedly held that when jury instructions omit or misdescribe an element of the offense, the error is harmless if the jury made the required finding in returning a guilty verdict on another count of conviction. *E.g.*, *United States v. Christensen*, 828 F.3d 763, 785, 789-90 (9th Cir. 2015); *United States v. Villalobos*, 748 F.3d 953, 958 (9th Cir. 2014); *United States v. Wilkes*, 662 F.3d 524, 544 (9th Cir. 2011).

*Wilkes* is dispositive. There, the instructions permitted defendant's conviction for honest services fraud under either a bribery or material misrepresentation theory. *Wilkes*, 662 F.3d at 544. The Supreme Court subsequently invalided the latter theory in *Skilling v. United States*, 561 U.S. 358 (2010), holding that honest services fraud requires a bribery or kickback scheme. The instructional error was harmless, however, because another count of conviction required a *quid pro quo*. *Wilkes*, 662 F.3d at 544. This Court held that "the jury's guilty verdict on the separate substantive count of bribery in violation of 18

3

U.S.C. § 201 confirm[ed] beyond any reasonable doubt that the jury would have convicted Wilkes of honest services fraud if the court's definition had been limited to the bribery basis that *Skilling* expressly approved." *Id.* The same is true here. Because the jury convicted defendant of honest services fraud, which required *quid pro quo* bribery (1-ER-68, 70, 74-76), it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty [under section 666] absent the [alleged] error." *Neder*, 527 U.S. at 18; *accord United States v. Jefferson*, 674 F.3d 332, 362-63 (4th Cir. 2012) (*Skilling* error harmless where jury convicted on substantive bribery offenses); *United States v. Siegelman*, 640 F.3d 1159, 1173-74 (11th Cir. 2011) (where honest services fraud instruction omitted *quid pro quo*, but jury convicted on parallel section 666 counts requiring *quid pro quo*, any error was harmless).

### 2. *Defendant's harmlessness analysis misses the mark because it ignores the jury's* quid pro quo *finding*

*Neder* explained that the harmlessness analysis often involves a reviewing court stepping into the jurors' shoes and assessing the record to determine what a reasonable jury would have done had it been properly instructed. 527 U.S. at 19. And, defendant argues, "where the

defendant contested the omitted element and raised evidence sufficient to support a contrary finding," the error generally is not harmless. (ASB 7 (quoting *Neder*, 527 U.S. at 19).)[1] Here, however, while the Court could evaluate the record and find *quid pro quo* bribery beyond a reasonable doubt, it need not do so. The jury clearly spoke on the omitted/misdescribed element—twelve jurors unanimously found *quid pro quo* bribery beyond a reasonable doubt with their five honest services fraud convictions.

The First Circuit's decision in *United States v. Fernandez*, 722 F.3d 1 (1st Cir. 2013), upon which defendant relies, is easily distinguished. There, the court instructed—contrary to *Snyder*, 144 S.Ct. at 1959—that the jury could convict the defendant of federal program bribery for a gratuity (a reward given after the official action with no beforehand agreement), and there was no other count of conviction requiring a *quid pro quo* agreement. 722 F.3d at 7-8, 18, 26-27. *United States v. Yates*, 16 F.4th 256, 269 (9th Cir. 2021), is

---

[1] "ASB" refers to Appellant's Supplemental Brief and "GAB" to the Government's Answering Brief.

similarly inapposite because there was no jury finding on a separate count establishing that the jury convicted on a valid theory.

Furthermore, although there is no reason to examine the evidence and arguments here because the jury actually found a *quid pro quo*, defendant's claim that "the *undisputed* evidence was, at worst, more consistent with [defendant's] receipt of a gratuity than his solicitation of a bribe" (ASB 3) is wrong. Much like he did in his opening and reply briefs, defendant advances a factual narrative divorced from the trial record.

Contrary to his claims, the government did not argue that defendant accepted a gratuity, and the jury did not convict on that theory. The government consistently argued that defendant engaged in *quid pro quo* bribery.[2] (GAB 5-38.) The jury so found, and that finding was amply supported by the record. Time and again, defendant dangled

_____

[2] Although the government stated that no *quid pro quo* was required for federal program bribery (1-ER-130)—which was an accurate statement of the law at the time based on this Court's precedent, *United States v. Garrido*, 713 F.3d 985, 996 (9th Cir. 2013)— the government extensively argued that defendant engaged in *quid pro quo* bribery, which was required for honest services fraud (1-ER-131-34, 138-41, 146-47, 150-54, 164-66, 174-80, 191-203; 23-ER-4449-51, 4489-93, 4496, 4513-14, 4519-20, 4524-25, 4528-29, 4546-50, 4552).

the carrot of help with the Telehealth contract to extract benefits for his son and engaged in what the court at sentencing called a "shakedown." (2-SER-310-11.)

*Snyder* held that section 666 prohibits not only bribes solicited or delivered *before* official action, but also bribes delivered *after* official action, provided there was an agreement beforehand. *Snyder*, 144 S.Ct. at 1951, 1959. Here, nearly 500 government exhibits and two weeks of witness testimony compellingly demonstrated a *quid pro quo* agreement, as alleged in the indictment, and also demonstrated that the agreement, as well as the bribe payments, occurred *before* defendant's official acts. (GAB 5-38.) Indeed, the ultimate official act (defendant's vote on the Telehealth contract) occurred in July 2018 *after* Flynn had delivered all the benefits defendant demanded—the USC admission, scholarship, professorship, and $100,000 payment from USC to Sebastian Ridley-Thomas's nonprofit.

Defendant and Flynn consummated their initial wink-and-nod exchange in June 2017, as memorialized in Flynn's hand-delivered letter to defendant. (GAB 10-12.) In exchange for securing Sebastian's admission, scholarship, and later a professorship too, defendant agreed

7

to perform future official acts, including both his own votes and his influence over other officials, to move County contracts forward on the terms Flynn sought. (GAB 9-22.) The fall and winter of 2017 saw defendant and Flynn each working to deliver on their respective ends of the bargain, with defendant's demands escalating in December when the sexual harassment investigation ballooned and Sebastian needed to quickly resign. (GAB 12-20.) Flynn obtained the admission, scholarship, and professorship in early 2018, and within hours of Flynn delivering the final piece of that trifecta, defendant worked to deliver in return. (GAB 20-22.) In an email that formed the basis for the honest services fraud conviction on Count 15, he told her, "Your wish is my command." (GAB 20-22, 37-38.) Defendant *then* performed official acts by exerting influence over unwitting public officials to push the Telehealth contract forward on Flynn's desired terms. (GAB 22.)

Months later, when defendant needed a partner to covertly direct a $100,000 payment to his son's new nonprofit, he again turned to Flynn, and the two expanded their *quid pro quo* scheme. (GAB 22-34.) Contrary to defendant's claim (ASB 5), nothing about Telehealth was certain, and there was no "unequivocal support" from defendant—quite

the opposite.  Defendant had *not* delivered the amended contract, and Telehealth's "survival" was in jeopardy.  (GAB 25-26.)  Flynn and her colleagues were alarmed and working to find a "better strategy" to keep Telehealth afloat at this "very critical point."  (*Id.*)

Then, a sudden sea change occurred.  After a meeting on April 26, 2018, during which defendant and Flynn discussed the $100,000 payment and Telehealth, Flynn reported "good news" to a colleague— USC was "going to get the Telehealth contract" but she "*had* to do a little favor *to get it*."  (GAB 26.)  Flynn's "favor" crystalized within days.  In exchange for defendant's vote and prodding of other officials to finally bring the amended Telehealth contract to fruition, Flynn directed a $100,000 payment from USC to Sebastian's nonprofit as part of her admitted "side deal" with defendant to secure the Telehealth contract.  (GAB 26-34.)  Following their corrupt agreement in April and Flynn's delivery of the $100,000 bribe payment in May, defendant performed for Flynn.  He took action to move the "master contract" forward and to influence the public official critical for Telehealth's advancement, and ultimately voted for the Telehealth contract on Flynn's desired terms in July.  (GAB 32-33.)  The honest services fraud

convictions on Counts 5, 16, 19, and 20 pertain to the $100,000 payment traded in exchange for defendant's official acts on Telehealth—and all required *quid pro quo* bribery. (1-ER-68-70, 73-76.)

Defendant nevertheless claims the government pursued a gratuities theory because it referred to a "reward" in closing. (ASB 6.) But *Snyder* rejected that argument. 144 S.Ct. at 1959. Section 666 prohibits a public official from corruptly soliciting, demanding, accepting, or agreeing to accept a thing of value intending to be "influenced or *rewarded*" in connection with government business. 18 U.S.C. § 666(a)(1)(B) (emphasis added). *Snyder* did not excise "rewarded" from the statute. Rather, *Snyder* explained that "[b]y including the term 'rewarded,' Congress made clear that the timing of the agreement is the key, not the timing of the payment." 144 S.Ct. at 1959.

 "[R]ewarded" is necessary to combat meritless defenses often raised in bribery cases (much like the ones defendant argued to the jury). *Snyder*, 144 S.Ct. at 1959. For instance, "rewarded" "closes off" arguments that the bribe could not have actually "influenced" the official action if the payment came after the act was complete. *Id.*

10

Similarly, "rewarded" serves to "shut the door," *id.*, on claims like defendant's that because he purportedly thought Telehealth was a good initiative, he never "changed his position" or "sold his vote" on account of any bribe. (23-ER-4383, 4440; *see* 23-ER-4382-87.) The government's reference in closing argument to a "reward" did not transform this into a gratuity case, nor did it create error, let alone harmful error.

**B. The Court Did Not Err in Declining to Give an Incorrect Theory-of-Defense Instruction, and Regardless, Any Error Is Harmless Because the Jury Found a *Quid Pro Quo***

Defendant further claims that his theory-of-defense instruction on Count 2 (proposed instruction 37(d)) was necessary to distinguish between bribes and gratuities or goodwill gifts. (ASB 8-9.) But setting aside the legal flaws with his proposal, any alleged error is harmless. The honest services fraud convictions confirm beyond a reasonable doubt that the jury found a *quid pro quo* and convicted defendant of bribery, not accepting a gratuity or goodwill gift. *Neder*, 527 U.S. at 18; *Wilkes*, 662 F.3d at 544.

Moreover, as detailed in the government's answering brief, *Snyder* confirms that defendant's proposed instruction 37(d) was legally incorrect and misleading. (GAB 91-98.) Regarding gratuities,

11

defendant's instruction wrongly states that "[a] benefit made to reward a politician for an act he has already taken or has already determined to take is not a bribe." (5-ER-928.) First, *Snyder* held that a benefit given after the official action pursuant to a preexisting agreement is still a bribe. 144 S.Ct. at 1959. Second, *Snyder* cited as an example of bribery prohibited by section 666 "the official who took a bribe before the official act but asserts . . . that he would have taken the same act anyway." *Id.* *Snyder* thus supports the government's argument—and longstanding precedent—that it is not a defense to honest services fraud or federal program bribery that defendant would have taken the same action absent the bribe. (GAB 80-82 (collecting cases).)

The ingratiation portion of instruction 37(d) was also legally incorrect because it improperly focused on *Flynn's* intent, stating that there was no bribe if the bribe-payor (Flynn) gave a benefit to curry favor. (5-ER-928.) But Flynn's intent was irrelevant; the inquiry is whether *defendant* intended to effectuate a *quid pro quo*. *Snyder*, 144 S.Ct. at 1959; *United States v. Shen Zhen New World I, LLC*, –F.4th–, 2024 WL 4140629, *6 (9th Cir. Sept. 11, 2024) (discussing *mens rea* distinction between bribe-payor and official bribe-taker); *see United*

*States v. Kimbrew*, 944 F.3d 810, 811-13 (9th Cir. 2019) (official guilty of bribery where he demanded benefits from undercover agent lacking corrupt intent). Contrary to defendant's proposal, if defendant intended to effectuate a *quid pro quo* when he demanded or accepted a benefit, he was guilty irrespective of Flynn's intent in giving the benefit.

In addition, defendant's instruction was unnecessary to avoid conviction for a "goodwill gift," as he claims. (ASB 8.) Where a benefit is "corruptly" demanded or accepted with the "specific intent to influence official action," that *mens rea* requirement sufficiently insulates officials from conviction based on a goodwill gift. *See Shen Zhen New World*, 2024 WL 4140629, at *7 n.3, *9. The instructions here required defendant to act "corruptly" while "intending to be influenced or rewarded in connection with [County business]." (1-ER-66.) The instructions further stated that an act is done "corruptly" if it is performed "voluntarily, deliberately, and dishonestly, for the purpose of either accomplishing an unlawful end or result or of accomplishing some otherwise lawful end or lawful result by an unlawful method or means." (1-ER-67.) Those instructions did not permit conviction for a goodwill gift.

13

Ultimately, because defendant is not entitled to an instruction that is unnecessary or not "legally sound," *Shen Zhen New World*, 2024 WL 4140629, at *8 (quoting *United States v. Kayser*, 488 F.3d 1070, 1076 (9th Cir. 2007)), the court did not abuse its discretion or otherwise err in refusing to give proposed instruction 37(d).

## C. *Snyder* Confirms That the Government's References to Defendant "Monetizing" His Public Office Described Bribery, Not Gratuities

In closing, the government argued as to both honest services fraud and section 666 that it is no defense that defendant always supported a certain item, or that defendant would have performed the official act even without the bribe, because public officials do not get to "monetize" their public service. (*E.g.*, 1-ER-130-31, 133-34.) Defendant claims—for the first time on appeal—that this is a legally invalid theory because soliciting or accepting benefits for an action the official is already planning to take is a gratuity, not a bribe. (ASB 9-10.) *Snyder* confirms that the government's position is correct. In explaining the coverage of section 666, *Snyder* stated:

> [T]hink about the official who took a bribe before the official act but asserts as a defense that he would have taken the same act anyway and therefore was not "influenced" by the payment. To shut the door on that potential defense to a

14

§ 666 bribery charge, Congress sensibly added the term "rewarded."

144 S.Ct. at 1959.

The jury was correctly instructed on *quid pro quo* bribery in connection with the honest services counts and found that defendant "solicit[ed] or agree[d] to accept a thing of value in exchange for an official act." (1-ER-75.) That defendant may have already supported or planned to vote for Telehealth at the time did not remove the exchange from the scope of section 666 because it is a fundamental violation of the public trust for an official to solicit a bribe. *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 378 (1991). There was no plain or harmful error on Count 2. (*See* GAB 78-86.)

///

///

# III

# CONCLUSION

Defendant's federal program bribery conviction on Count 2 should be affirmed.

DATED: September 20, 2024

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

*/s/ Lindsey Greer Dotson*

LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Public Corruption
and Civil Rights Section

ELANA SHAVIT ARTSON
Assistant United States Attorney
Criminal Appeals Section

THOMAS F. RYBARCZYK
MICHAEL J. MORSE
Assistant United States Attorneys
Public Corruption and
Civil Rights Section

Attorneys for Plaintiff-Appellee
UNITED STATES OF AMERICA

## CERTIFICATE OF COMPLIANCE

I certify that:

1.      This brief contains approximately 2,798 words and complies with the 2,800-word limit for the government's supplemental answering brief designated by court order dated August 9, 2024.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word 2016.

DATED: September 20, 2024          */s/ Lindsey Greer Dotson*

LINDSEY GREER DOTSON
Attorney for Plaintiff-Appellee
UNITED STATES OF AMERICA